(No. 93-CC-0753—

Bruce Buelke and Dawes Transport, Inc., Claimants, *v.* The State of Illinois, Respondent.

*Opinion filed August 13, 1998.*

Katz, McAndrews, Balch, Lefstein & Fieweger, P.C. (Stephen T. Fieweger, of counsel), for Claimants.

Jim E. Ryan, Attorney General (Michael A. Wulf, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

Claimant, Bruce Buelke, was involved in an accident while operating a truck for Dawes Transport on December 20, 1991, at approximately 7:20 a.m. at truck scale no. 19 located along Interstate 80 in Rock Island, Illinois. Buelke was operating a 1985 Mack trailer with an attached 1984 Fruehauf semi-trailer in a westerly direction along Illinois Interstate 80. After entering the weigh station, Buelke's vehicle skidded off the ramp and overturned, damaging the truck, semi-trailer, and its contents. The Claimant also suffered bodily injuries and makes a claim for lost profits arising from the accident. Claimant claims that the State was negligent in leaving this scale ramp open and failing to salt, sand, or otherwise plow the ramp while it was opened since it had accumulated a layer of ice on it from a storm. Respondent contends that the proximate cause of the accident was the negligence of the Claimant in operating his vehicle.

### Facts

The facts of this case are generally not in dispute. On the morning of December 20, 1991, a sleet and ice storm struck northwestern Illinois, including Rock Island County, where the accident occurred. The Illinois Department of Transportation communications center log book, by 4:45 a.m. on December 20, 1991, showed that a storm had hit Rock Island County. The Illinois Department of Transportation workers had been sent out to

cover roads in Rock Island County. State Trooper Juan de los Reyes stated that when he came on duty at 6:00 a.m. on the morning of December 20, 1991, the surfaces of the highways that he traveled in Rock Island were ice-covered. In his report, dated July 20, 1992, to the Illinois Department of Transportation concerning this accident, State Trooper de los Reyes noted that the road conditions at scale ramp 19 were the same as the roads in the area.

David Sullivan, a truck weight inspector for the Illinois State Police, who had worked as a truck weight inspector for 15 years prior to December 20, 1991, notes that on the morning of December 20, 1991, he had extreme difficulty in driving the roadways once he reached the interstate roads. Mr. Sullivan admitted that the scale ramp is not used for interstate transportation, i.e., going from place to place, but rather the scale's purpose is to determine if trucks are overweight and to determine revenue charges to be made by the State of Illinois for overweight trucks.

Mr. Sullivan stated that, when he used the westbound scale ramp for scale ramp 19, he traveled at a speed of no more than ten miles per hour because of the condition of the roadway. He stated the scale had not been salted, sanded or plowed prior to his arrival at work on the morning of the accident at approximately 7:15 a.m. Mr. Sullivan arrived 15 minutes late for his shift due to the inclement weather conditions.

The scale house truck weight inspector on duty at the time of the accident was Barbara Farmer. Ms. Farmer did not close the scale ramp and claimed she was unaware of the hazardous conditions on the ramp. No prior accidents occurred on the morning in question.

John Wegmeyer, IDOT studies and plan engineer, testified to the design and layout of the ramps and weigh

station. He described the conformity of the scale with AASHTO standards and signed off by the Federal Highway Commission along with any guardrails, stating that any guardrails would not be required and would be inappropriate. He utilized drawings to establish a distance, starting at the edge of I-80 to the start of the ramp, of approximately 300 feet, then approximately 1,000 feet to the in-motion scale, followed by an area of 425 feet in length which widens to two lanes, "By-Pass" and "Static Weigh," with a median. The by-pass and static weigh-scale lanes are 16 feet and 12 to 14 feet wide, respectively. It is within this 425 feet that lights are posted to direct the truckers. The first set of lights are approximately 300 feet from the weigh in-motion scale. Wegmeyer testified that a truck moving at ten miles per hour, as Buelke states, would take 20 seconds to progress from the scale to the first set of lights. The Claimant testified that he had been an over-the-road truck driver for 15 years and he was traveling from Milwaukee, Wisconsin to Los Angeles, California. At approximately 6:00 a.m., he left Dixon, Illinois, and started westerly on I-88, where he encountered freezing rain while driving after about the first half-hour of travel. He subsequently traveled to westbound I-80 at a speed of approximately 45 miles per hour as he approached the I-88/I-80 ramp to the scale house 19 ramp, when he noticed that that section of the road had been salted. By the time he was entering the scale house 19 ramp, he reduced the speed of his tractor-trailer to ten miles per hour. Upon entering the open scale ramp, he encountered a ramp that was covered with a solid sheet of ice. The Claimant also testified that he noticed the sign located one-half mile from the scale house ramp which indicated that the ramp was open. Because he is required by Illinois law to weigh in at an open scale ramp, he proceeded down the ramp despite its condition. As he approached the scale house, Claimant stated that the light indicated that he needed to

weigh in and its arrow indicated that he should go down to the weigh-in lane. As he approached the second set of arrows, he testified that both arrows were operating. He testified that, at that point, he truck was lined up to go down the by-pass lane if he had not made a steering correction, but he decided he should go down the scale lane and he turned the wheel of his truck from a 12:00 o'clock to a 1:00 o'clock position, which would be sufficient to take his vehicle and his tractor-trailer down the scale lane. After making the steering correction, he tapped the brakes and his tractor-trailer slid in a straight line off the road and shoulder and down the embankment where it flopped over on its right side.

The Claimant suffered bruises to his left ankle, to his left shin and to the backside of his right thigh, which caused him problems for approximately one and one-half weeks. His tractor-trailer sustained damages of $22,442.67 and he incurred towing charges of $6,047. There was damage to the cargo contained in the Claimant's tractor-trailer, towing of $744.92 and he incurred $1,800 in tractor and trailer rental expenses to complete his run to Los Angeles. He incurred $60 in expenses for emergency treatment at Avalone Urgent Care. He stated this tractor and trailer were in good mechanical condition and had no external and internal damage to their structural body prior to December 20, 1991. He testified as to loss of runs between the period of January 7, 1992, and February 17, 1992, and one run the week of April 22, 1996, with average net revenue loss per run of $1,421 for total lost profit for the six runs that he missed of $8,526. Claimant seeks total damages of $41,620.59. Both Claimants Buelke and Dawes Transport have received insurance payments from the Associates, Inc., which has a subrogation interest herein in the amount of $20,181.13. The damages were not disputed by Respondent at hearing or in its brief.

## Findings

Both parties agree that, generally, the State is not an insurer of the safety of the users of its highways and, in order to prevail on a negligence claim, a Claimant must prove that the State had actual or constructive notice of the dangerous condition and that the alleged defect was the proximate cause of the Claimant's injuries. (*Sharp v. State* (1995), 47 Ill. Ct. Cl. 227.) A Claimant is required to prove by a preponderance of the evidence that a defect or hazardous condition existed at the site of the accident; that the State had actual or constructive notice of the defect or hazardous condition; and that the defect or hazardous condition was the proximate cause of the accident. *Kataldl v. State* (1983), 36 Ill. Ct. Cl. 24.

The record herein indicates that the State had notice of hazardous road conditions and was in the process of sanding and salting the roadways. Testimony indicated that IDOT procedure is to address the main roadways and bridges first, and that scale ramps are cleared and salted after the main roadways are cleared. This seems a sensible procedure, as the scale ramps may be closed by simply flipping a switch inside the scale house. Mr. Sullivan did close the ramp upon his arrival, virtually concurrent with Claimant Buelke's accident. Respondent's argument that it had no notice of the icy conditions is not supported by the preponderance of the evidence. Ms. Farmer should have known of the ramp conditions well before the accident occurred in the exercise of due care in carrying out her duties.

Respondent argues that Mr. Buelke's steering correction in attempting to comply with the arrow signals and move into the manual scale lane was the sole proximate cause of the accident, and that he was negligent in driving too fast for conditions. However, Respondent has

not proved that Claimant was driving too fast for conditions or in any way contributed to his own injuries. The evidence indicates that the witnesses relied upon by Respondent did not see the accident and that Trooper de los Reyes did not conduct an accident reconstruction investigation of the incident. Respondent's witnesses, with the exception of Ms. Farmer, all agreed that the ramp was very slippery and dangerous.

Based upon the foregoing, it is hereby ordered that Claimant Buelke be awarded the sum of $34,828.67 for all damages arising herein. Claimant Dawes Transport is hereby awarded $6,791.92 for property damage and towing. Payment of the awards shall be withheld pending resolution of the lien issues.